MARTHA S. CHURCHWARD *v.* JACK CHURCHWARD.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued March 6—decided May 3, 1945.

*Isadore Chaplowe,* with whom, on the brief, were *Lyman H. Steele* and *Vincent P. Dooley,* for the appellant (plaintiff).

*Frederick H. Wiggin* and *Catherine J. Tilson,* for the appellee (defendant).

JENNINGS, J. The plaintiff claims reimbursement for sums spent by her for the support of herself and two daughters of the parties after the defendant left his family without fault on her part. The defendant claims to have made provision for the support of the family at the time of the separation. The finding, as corrected, is as follows: Plaintiff and defendant are

husband and wife. They have two daughters, Josephine, born July 11, 1920, and Mary Joan, born July 24, 1931. The family lived together in a house in New Haven until March 9, 1943. It stood in the name of the plaintiff. The parties separated on the date mentioned for an unassigned cause. No fault or misconduct on the part of the plaintiff was charged. Thereafter, the plaintiff continued to occupy the premises with her two daughters.

In 1921, the defendant engaged in a welding business in New Haven financed by money borrowed by both parties. He got into financial difficulty in February, 1922. The parties then orally agreed to continue the business as a partnership known as Churchward and Company. The plaintiff furnished $3000 in cash and gave all of her time to the assistance of her husband in the conduct of the business from 1922 to 1931, when her second daughter was born. She also invested further sums in the business in an unspecified amount. The profits were relatively small and, in 1942, there was a loss of about $22,000. This was converted in 1943 into a profit of about the same amount.

In 1936, the defendant and Myron A. Farnham formed a corporation called the Churchward Engineering Company to manufacture an electric holder invented by the defendant. The defendant contributed his patents, and Mr. Farnham $2000. No further capital contributions have ever been made and the plaintiff has never contributed anything thereto by way of money or services. The company changed its form of organization from a corporation to a partnership in 1941. The defendant and Mr. Farnham were sole and equal partners. The profits were small until 1941 when they were over $54,000. In 1942, they were nearly $150,000, and in 1943, over $176,000.

Late in 1942, the parties were in accord that their

interests would be best served if the defendant transferred to the plaintiff his interest in the partnership known as Churchward Engineering Company and the plaintiff transferred to him her interest in Churchward and Company. Preliminary papers were drawn by defendant's counsel and submitted to the plaintiff on November 16, 1942, but she, on advice of her counsel, refused to execute them on the ground that they appeared to be separation papers. At no time during these discussions was there any talk of separation nor did the plaintiff have any idea that the defendant contemplated leaving her. The plaintiff withdrew at that time a balance of $3900 belonging to the defendant from a checking account standing in the joint names of the parties and redeposited it in her own name. The defendant left home on November 16 for unspecified reasons. On November 25, 1942, the arrangements for the transfer of interests referred to were carried out. The various contracts were carefully drawn in legal form and contained no reference to the reasons actuating the parties. The plaintiff got the defendant's interest in the Churchward Engineering Company, $5000 of the undistributed profits of that company to which the defendant was entitled, and an agreement to be saved harmless from any liability on account of Churchward and Company, particularly on account of notes amounting to $8500 which she had indorsed. She and Farnham formed a new partnership to manage the Engineering Company. On her part she agreed not to interfere in the affairs of Churchward and Company and transferred to the defendant her interest therein. Between this time and the time of trial in April, 1944, she had an income of nearly $100,000, almost all of it from the profits of the Churchward Engineering Company. Nearly $72,000 of this amount was spent in income taxes.

The defendant returned home for Thanksgiving dinner the day after the execution of the papers and remained there until March 9, 1943, when he left and has since declined to comply with the requests of the plaintiff that he return. Since November 25, 1942, he has paid her $200 as a Christmas present, $600 for board and $2000 under order of the court. She spent $11,665 on ordinary living expenses from March 9, 1943, to the time of trial, on which sum she credited the defendant with payments of $3100. Included in this sum of $11,665 are $1300 which she paid for a fur coat, $900 for a car for her daughter Josephine and $372 for jewelry, also for Josephine. The latter lived at home without paying board though engaged in business for herself.

Among the circumstances which led to the making of the adjustments of November 25, 1942, were (a) the fact that the defendant did not want the plaintiff to have anything to do with Churchward and Company; (b) the fact that Churchward and Company had shortly before secured new contracts of so large an amount that it became necessary to get larger premises; and (c) the desire of the parties to separate the ownership of the two companies in order that the large profits which would in the future be received from the Churchward Engineering Company should not be jeopardized by the defendant's hazardous new war ventures in Churchward and Company. The trial court also found as a fact that "A material purpose of the adjustment of November, 1942 was to provide the plaintiff with independent means for her support and that of her children if they were to remain with her." The defendant did not testify in his own behalf.

The argument on appeal centered largely around the finding last quoted, which was disputed. The evidence does not support it. No one so testified. The parties

dealt at arm's length through attorneys and none of the numerous agreements in evidence refer to the matter. They show that the plaintiff traded her interest in Churchward and Company for the defendant's interest in the Churchward Engineering Company. The fact that this exchange was financially advantageous to the plaintiff is insufficient, without more, to justify the inference that it was for the purpose of securing the plaintiff's future support and that of the minor child. The fact that no separation was contemplated, at least by the plaintiff, at the time of the execution of the contracts militates against any such inference, as does the fact that there was no mention of support in the agreement. *Adams* v. *Turner*, 73 Conn. 38, 45, 46 Atl. 247. The questioned finding cannot stand.

The trial court concluded that the relations of the parties were not harmonious, that the plaintiff knew that the property arrangements in November, 1942, were intended to give her an assured and independent income, that the defendant furnished the plaintiff with adequate means of support to the time of trial and that it was justified in examining and determining the real nature of the adjustments made.

There are three bases of recovery when a creditor sues a husband for goods furnished a wife: an express promise on his part to pay; the right at common law to recover for necessaries; the right conferred by General Statutes, Cum. Sup. 1935, § 1596c, quoted in the footnote.[1] *Baledes* v. *Greenbaum*, 112 Conn. 64, 67, 151

---

[1] Sec. 1596c. LIABILITY FOR PURCHASES. All purchases made by either husband or wife in his or her own name, in case of marriages on or after April 20, 1877, shall be presumed in the absence of notice to the contrary to be on his or her private account and liability; but both shall be liable for the reasonable and necessary services of a physician rendered the husband or wife or their minor child while residing in the family of its parents, and for the rental of any tene-

Atl. 333; and see *Ematrudo* v. *Gordon*, 100 Conn. 163, 167, 123 Atl. 14, for a history of the statute to that time. Where a wife has expended her money for the support of the family and seeks to get it back, her only remedy is under the statute, although she may in equity secure an order for future support. *Hein* v. *Hein*, 127 Conn. 503, 18 Atl. (2d) 374. The complaint in its final form could only be construed as an action by a wife abandoned by her husband to recover from him money to reimburse her for funds of her own used for her support and the support of their minor daughter, including medical and legal expenses.

It was formerly the settled law of this state that the fact that the husband had furnished support for his wife under these circumstances was no defense to an action under the statute. *Baledes* v. *Greenbaum*, supra, 67, and cases cited. By an amendment passed in 1935, contained in the last sentence of the quoted statute, the General Assembly evidently intended to change the law in this respect. Judge Wheeler had pointed out the injustice which might result from the application of this rule but said that it was a matter

ment or premises actually occupied by such husband and wife as a residence and reasonably necessary to them for such purpose; and both shall also be liable when any article purchased by either shall have in fact gone to the support of the family, or for the joint benefit of both, or for the reasonable apparel of the wife, or for her reasonable support while abandoned by her husband. It shall be the duty of the husband to support his family, and his property when found shall be first applied to satisfy any such joint liability; and the wife shall be entitled to an indemnity from the property of the husband for any property of her own that shall have been taken, or for any money that she shall have been compelled to pay, for the satisfaction of any such claim. No action shall be maintained against a husband under the provisions of this section, either during or subsequent to any period of separation from his wife, for any liability incurred by her during such period of separation, if, during such period, he shall have provided her with reasonable support.

for the legislature rather than for the courts. *Howland Dry Goods Co.* v. *Welch,* 94 Conn. 265, 268, 108 Atl. 510. The meaning of the amendment is plain. If the husband is providing reasonable support for the wife during the separation, neither she nor any third party can recover under any of the provisions of this statute. This principle points up the importance of the finding of the trial court last referred to, for the decision was apparently based largely, if not entirely, thereon. Without this finding, the basic conclusion that the defendant furnished the plaintiff with adequate means of support to the time of trial cannot stand unless it is so that the plaintiff is not entitled to recover because she had ample means of her own and in fact a much larger income than the defendant.

"General Statutes, § 5155, as amended by Cum. Sup. 1935, § 1596c, provides in part that 'It shall be the duty of the husband to support his family, and his property when found shall first be applied to satisfy any such joint liability.' This clearly establishes the primary obligation of the husband to support his family." *Bohun* v. *Kinasz,* 124 Conn. 543, 546, 200 Atl. 1015. The disability of the wife to sue her husband at common law has been removed. General Statutes, § 5154; *Bushnell* v. *Bushnell,* 103 Conn. 583, 586, 131 Atl. 432. General Statutes, Cum Sup. 1935, § 1596c, quoted above, specifically gives her a right to indemnity "for any money that she shall have been compelled to pay" for the support of the family. The money paid by her under the circumstances disclosed by the finding was paid under compulsion. *Bohun* v. *Kinasz,* supra, 546. Her right is not defeated because she has private means. 1 Williston, Contracts (Rev. Ed.), p. 780. This text states that early English decisions to the contrary have been repudiated in England and have not been followed in this country. *Hunt* v.

*Hayes,* 64 Vt. 89, 23 Atl. 920, is the only case found squarely supporting the defendant's contention and is listed by Williston as one of the two American cases adhering to the early English doctrine. See, in support of the majority rule, *De Brauwere* v. *De Brauwere,* 203 N. Y. 460, 463, 96 N. E. 722; *Manufacturers Trust Co.* v. *Gray,* 278 N. Y. 380, 387, 16 N. E. (2d) 373; *Cory* v. *Cook,* 24 R. I. 421, 426, 53 Atl. 315, 317; 3 Page, Contracts, p. 2607; note, 98 Am. St. Rep. 646; note, 18 A. L. R. 1131; 41 C. J. S. 510.

The primary obligation for the support of the family was on the defendant. *Bohun* v. *Kinasz,* supra. The money obtained by the plaintiff as a result of the transactions described was her own. It was not even a gift from her husband but was the avails of a contract voluntarily entered into by the parties for a valuable consideration. If the financial position of the two companies had been reversed and Churchward and Company had become the successful one, the plaintiff would have had no claim against the defendant for a share in the profits. There is no legal reason why she should be required to devote her profits in the engineering company to the discharge of his obligations. By the overwhelming weight of authority, the defendant was not relieved of the obligation of supporting his family because the plaintiff had these private means. The fact that a wife has money of her own does not prevent her from pledging the husband's credit for her necessary support when they are living together. 1 Williston, loc. cit. There is no reason why his desertion should render her position less advantageous.

The conclusions reached require a rather different approach to this case and it will be fairer to both parties if a new trial on the merits is ordered. There must be something more in the case than is apparent on this record to justify an inference that the defendant pro-

vided the plaintiff with the reasonable support contemplated by the statute quoted above. One example would be evidence of an intention that the transactions described were entered into for that purpose. There does not appear to be any material disagreement about most of the facts relating to the financial setup, developed at such inordinate length on the trial, and it would seem that the case could be materially expedited and simplified if the parties would stipulate as to facts in that category.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.